**UNITED STATES DISTRICT COURT**

MIDDLE DISTRICT OF ALABAMA
OFFICE OF THE CLERK
POST OFFICE BOX 711
MONTGOMERY, ALABAMA 36101-0711

DEBRA P. HACKETT, CLERK  TELEPHONE (334) 954-3600

March 11, 2008

# NOTICE OF CORRECTION

**From:** Clerk's Office

**Case Style:** Jordan v. Equity Group Eufaula Division, LLC et al

**Case Number:** 2:08-cv-00152-MEF

**This Notice of Correction was filed in the referenced case this date to attach the correct PDF documents previously attached to include the electronic signatures.**

**The correct PDF documents are attached to this notice for your review. Reference is made to document # 5 and # 6 filed on March 10, 2008.**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ROGER JORDAN, )<br>)<br>      Plaintiff, )<br>)<br>  v. )<br>)<br>EQUITY GROUP EUFAULA DIVISION, LLC, )<br>JENNIFER BAKER and RANDY CLINE )<br>)<br>      Defendants. ) | CIVIL ACTION NO.<br>2:08-cv-00152-MEF-TFM |

**MOTION TO DISMISS
AND TO STRIKE DEMAND FOR JURY TRIAL**

Defendants, pursuant to Fed. R. Civ. P. 12(b)(6), 12(f) and 39(a)(2), hereby move the Court to dismiss all of Plaintiff's claims as such claims and demands are preempted by Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a) and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* In addition, Defendants move to strike Plaintiff's demand for a jury trial under ERISA.

In support of this motion, Defendants state the following:

**A.  Introduction**

Plaintiff, Roger Jordan ("Jordan"), was employed by Defendant Equity Group Eufaula Division, LLC ("Equity") as a live hanger in its poultry processing facility in Barbour County, Alabama. [See Complaint, ¶ 5.]  Jordan was a member of a union collective bargaining unit and a participant in a group health insurance plan provided by Equity as an employee benefit. The health insurance plan is an employee welfare benefit plan as defined by ERISA. 29 U.S.C. § 1002(a).  Jordan's employment with Equity was terminated on or about November 21, 2007. [Complaint, ¶ 5].

On or about January 31, 2008, Plaintiff filed his Complaint in the Circuit Court of Barbour County, Alabama. He alleges his termination of employment and health insurance benefits occurred after Equity learned that he suffered a catastrophic injury while jumping on a trampoline, and his complaint purports to state claims for fraud, outrage, and wrongful termination. Defendants timely removed this case to the United States District Court for the Middle District of Alabama on the basis of federal question jurisdiction, as his purported state law claims are completely preempted by federal labor laws. For similar reasons, this action should now be dismissed.

### B. Jordan's Claims Are Governed by a Collective Bargaining Agreement, and Are Thus Preempted By Federal Labor Law And Otherwise Barred

As Jordan well knows, at all times during his employment with Equity, he and all other production workers at the plant were represented by the Retail, Wholesale and Department Store Union ("Union"), for purposes of bargaining with respect to <u>all</u> terms and conditions of employment. Accordingly, the terms of Jordan's employment, including the termination of his employment and his entitlement to health care insurance and other benefits, are subject to and governed by a collective bargaining agreement ("CBA") between Equity and the Union.[1]

---

[1] Copies of the Collective Bargaining Agreement dated March 1, 2004 and the summary plan description for Equity employee health insurance plan, which were in effect at all relevant times, are attached to this Motion to Dismiss as Exhibits "1" and "2", and may be considered by the Court given the nature of Jordan's claims and, more important, his express reference to Equity's employee handbook and his health insurance benefits as a purported bases for his claims. [Complaint, Count II, ¶ 3.] See <u>Lockwood v. Beasley</u>, 2006 U.S.App.LEXIS 31618, *7-9 (11th Cir. Dec. 20 2006); <u>Orange Beach Dev. Group, L.P. v. Powers</u>, 2007 U.S.Dist.LEXIS 47757, *7 (S.D.Ala. 2007)(court considered bylaws, articles of incorporation and various agreements not referenced in the complaint in context of motion to dismiss; "where the documents referred to in the motion are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6)dismissal"); <u>Bozeman v. Lucent Technologies, Inc.</u>, 378 F.Supp.2d 1348, 1350, n.1 (M.D.Ala. 2005)("the court finds that because the relevant documents are indisputable, and their subject matter is otherwise directly referenced in the Complaint, the opt out forms can properly be attached to a motion to dismiss without converting it into a summary judgment motion").

The CBA precludes Jordan's claims as a matter of law for several reasons.

### 1.  Jordan's State Law Claims Are Preempted By Federal Labor Law.

In <u>Teamsters, Chauffeurs, Warehousemen & Helpers v. Lucas Flour Co.</u>, 369 U.S. 95, 82 S.Ct. 571 (1962), the Supreme Court held that Section 301(a) of the Labor Management LMRA, 29 U.S.C. § 185(a), preempts <u>any</u> state law claims for breach of a collective bargaining agreement:

> The possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements.  Because neither party could be certain of the rights which it had obtained or conceded, the process of negotiating an agreement would be made immeasurably more difficult by the necessity of trying to formulate contract provisions in such a way as to contain the same meaning under two or more systems of law which might someday be invoked in enforcing the contract.  Once the collective bargain was made, the possibility of conflicting substantive interpretation under competing legal systems would tend to stimulate and prolong disputes as to its interpretation ... [and] might substantially impede the parties' willingness to agree to contract terms providing for final arbitral or judicial resolution of disputes.

82 S.Ct. at 577 (footnote omitted).

In subsequent decisions, the Supreme Court consistently has given broad scope to the preemptive effect of Section 301.  In <u>Allis-Chalmers Corp. v. Lueck</u>, 471 U.S. 202, 105 S.Ct. 1904 (1985), an employee, alleging a bad faith refusal to honor his claim for disability benefits as provided by a collective bargaining agreement, sued his employer and the insurance company that administered the disability benefits.  The Court reemphasized the compelling interest in uniform federal labor law underlying the doctrine of preemption:

3

> [Q]uestions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort. Any other result would elevate form over substance and allow the parties to evade the requirements of § 301 by relabeling their contract claims as claims for tortious breach of contract.

105 S.Ct. at 1911.

More important, the Court noted that "the need to preserve the effectiveness of arbitration was one of the central reasons that underlay the Court's holding in <u>Lucas Flour</u>." 105 S.Ct. at 1915. The Court explained that <u>arbitrators</u>, and not courts, must decide issues relating to the interpretation of collective bargaining agreements:

> A rule that permitted an individual to sidestep available grievance procedures would cause arbitration to lose most of its effectiveness, as well as eviscerate a central tenet of federal labor contract law under § 301 that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance.

<u>Id.</u> (citation omitted). Accordingly, the Court held that the employee's claim was preempted, since proof of bad faith would require proof of a breach of contract:

> Because the right asserted not only derives from the contract, but is defined by the contractual obligation of good faith, any attempt to assess liability here inevitably will involve contract interpretation.... These questions of contract interpretation, therefore, underlie any finding of tort liability, regardless of the fact that the state court may choose to define the tort as "independent" of any contract question. Congress has mandated that federal law govern the

4

> meaning given contract terms.

105 S.Ct. at 1914-5 (footnote omitted). See also Lingle v. Norge Division of Magic Chef, 486 U.S. 399, 405, 108 S.Ct. 1877, 1881 (1988)("if the resolution of a state-law claim depends upon the meaning of a collective- bargaining agreement, the application of state law ... is pre-empted and federal labor-law principles ... must be employed to resolve the dispute"); Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, 23, 103 S.Ct. 2841, 2853 (1983)("the preemptive force of § 301 ... displace[s] entirely any state cause of action 'for violation of contracts between an employer and a labor organization'") (citation omitted); Turner v. AFT Local 1565, 138 F.3d 878, 884 (11th Cir. 1998)("if the resolution of a state-law claim depends upon interpreting the terms of a collective bargaining agreement, then the state-law claim is preempted by the LMRA").

Federal courts in Alabama have made clear that an employee subject to a collective bargaining agreement, such as Jordan, has no possible state law remedy for claims relating to a discharge, benefits or other rights governed by the terms of the collective bargaining agreement. For example, in Rasheed v. International Paper Co., 826 F.Supp. 1377 (S.D.Ala. 1993), plaintiff ("Rasheed"), a former employee of defendant International Paper ("IP"), asserted various claims relating to his discharge, including that IP improperly considered portions of his disciplinary history when making the decision to discharge him. In light of the fact that Rasheed was represented by a union and the terms of his employment were governed by a collective bargaining agreement, the Court dismissed the contract claim as a matter of law, concluding that the claim was preempted by the LMRA:

> [P]laintiff essentially challenges IP's action in considering a portion of plaintiff's disciplinary

5

> history (that is, oral reprimands) in making the decision to terminate him. The [Collective Bargaining] Agreement in this case relegated authority to IP to terminate employees for 'just cause'; IP 'policy,' however, provided for the circumstances under which disciplinary matters would be considered in making a 'just cause' determination. Even if the breach of contract claim is construed as not being 'directly founded' on the collective bargaining agreement, resolution of the claim nevertheless is 'substantially dependent' on an analysis of that Agreement. Accordingly, the claim is preempted by § 301 of the LMRA.

826 F.Supp. at 1384. Similarly, in Bolton v. McWane Cast Iron & Pipe Co., 328 F.Supp.2d 1229 (N.D.Ala. 2004), plaintiff ("Bolton") was employed by defendant McWane Cast Iron & Pipe Co. ("McWane") as a maintenance employee. As such, Bolton was part of a bargaining unit represented by a union. After Bolton was injured when he drove off the road on his way home after a 14 hour work day, he asserted a state law claim against McWane, alleging that McWane was negligent in requiring him to work 14 hours on a shift. The Court concluded that Bolton's state law claim was completely preempted by Section 301 of the LMRA, as it necessarily implicated and was dependent upon an analysis of the controlling collective bargaining agreement:

> The CBA in this case specifically addresses overtime. It provides in part, "The Company has the right to schedule overtime work for the plant, its departments and various groups of employees." (CBA at 7.) Since there is no independent state law duty available to Plaintiff, an evaluation of his claim will by necessity involve a determination of whether this provision and other provisions of the CBA imply a duty of care in scheduling overtime so as to avoid injury to employees.

328 F.Supp.2d at 1235. See Turner v. AFT Local 1565, supra, 138 F.3d at 884 ("Because

6

resolution of Turner's tortious interference with employment claim would require interpretation of the terms of the collective bargaining agreement, we hold that this claim is preempted by the LMRA.").

Here, Jordan's claims are unquestionably tied to, intertwined with and dependent upon an interpretation of the CBA. Article 3.3 of the CBA provides that employees, such as Jordan, may only be terminated for "just cause":

> Employees having more than ninety (90) calendar days of service may be discharged for just cause and such discharge must be by written notice to the employee stating the reason for the discharge. For the purpose of this section, "just cause" shall include but shall not be limited to: dishonesty; intoxication; violation of the Company's drug and alcohol policy; harassment policy or safety policies and procedures; assault; battery; fighting; damage or theft of property or product; and professional gambling.

Article 17 of the CBA expressly requires Equity to provide certain health insurance benefits. Moreover, Article 6.2 of the CBA contains <u>exclusive</u> grievance and arbitration procedures to resolve "any difference, dispute, or complaint aris[ing] over the interpretation or application of this Agreement," which are therefore directly applicable to Jordan's claims.

Accordingly, Jordan's claims are completely preempted by federal labor law. His claims, no matter how cast as for breach of contract, wrongful discharge, outrageous conduct or infliction of emotional distress, are expressly based on his termination and denial of benefits, and cannot possibly be resolved without an interpretation of the terms of the CBA. For the same reasons set forth in <u>Rasheed v. International Paper Co.</u>, supra, and <u>Bolton v. McWane Cast Iron & Pipe Co.</u>, supra, Jordan's claims against Equity must be dismissed. Jordan cannot avoid this result merely by creative labeling; "[t]he pre-emptive force of [Section] 301 is so powerful as to

7

displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.'"  Caterpillar Inc. v. Williams, 482 U.S. 386, 107 S.Ct. 2425, 2430 (1987)(citation omitted).

### 2. Even If Jordan's Claims Were Construed As Section 301 Claims, They Must Be Dismissed.

Section 301 permits an employee to sue his employer for violations of a collective bargaining agreement only under limited circumstances.  Thus, in order to bring a valid action under Section 301, an employee protected by a collective bargaining agreement must allege that (1) he has exhausted all available contractual grievance and arbitration remedies and (2) that the union has violated its duty of fair representation.  Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 914 (1967); Del Costello v. International Brotherhood of Teamsters, 462 U.S. 151, 103 S.Ct. 2281, 2290-1 (1983); Coppage v. United States Postal Service, 281 F.3d 1200, 1204 (11th Cir. 2002); Abrams v. Shehan, 1998 U.S.Dist.LEXIS 5318, *29 (S.D.Ala. 1998); Rasheed v. International Paper Co., supra, 826 F.Supp. at 1387.  Thus, even were the Court to construe Jordan's state law claims as Section 301 claims, those claims still must be dismissed.

In fact, all of Jordan's claims, including any complaints for a discharge without just cause or regarding the termination or status of his health insurance coverage, are subject to the mandatory and exclusive grievance procedure set forth in the CBA.  Clearly, Jordan has not alleged that he exhausted those procedures, including any internal union procedures for an appeal, with respect to any grievance related to the accident, his employment termination, or the termination of his health insurance benefits.

Nor has Jordan alleged that the Union breached its duty of fair representation in connection with any grievance or term of Jordan's employment.  To do so, as the United States

8

Supreme Court has made clear, Jordan would be required to allege that the Union acted in an arbitrary or discriminatory manner, or in bad faith. Vaca v. Sipes, supra, 387 S.Ct. at 916; see also Air Line Pilots Association, International v. O'Neill, 499 U.S. 65, 111 S.Ct. 1127, 1135 (1991)("Any substantive examination of a union's performance, therefore, must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities.") (citations omitted). The Complaint, however, is totally bereft of even of a hint of such an allegation. This case must be dismissed.

### C. Jordan's State Law Claims Related to His Loss of Health Insurance Benefits Are Also Completely Preempted by ERISA

Jordan alleges his health insurance benefits were improperly terminated in connection with the termination of his employment with Equity. [Complaint, ¶7.] The Consolidated Omnibus Budget Reconciliation Act of 1985, Pub.L No. 99-272, Title X, Section 100001(codified at 29 U.S.C. .§§ 1161 et seq.) ("COBRA"), which amended ERISA, requires sponsors of ERISA group health plans to provide the option to elect continuation coverage in certain circumstances for a limited period of time following employment termination. See 29 U.S.C. §§ 1161(a), 1162. "A claim regarding the alleged wrongful denial of benefits to a plaintiff covered under such a continuation of coverage is governed by ERISA." Mattive v. Healthsource of Savannah, Inc., 893 F.Supp. 1556 (S.D. Ga. 1996).

Jordan's claim for improper termination of health insurance benefits cannot be brought under state law because all state laws that "relate to" employee benefit plans are preempted by ERISA. 29 U.S.C § 1144(a); Pilot Life Insurance Company v. Dedeaux, 481 U.S. 41 (1987) (bad faith and fraud claims preempted); Young v. Ramsay Youth Services of Dothan, 313 F.Supp.2d

9

1275 (M.D. Ala. 2004) (fraud, conversion, breach of contract, conspiracy to defraud, conspiracy to convert funds and outrage claims preempted). However, rather than pursuing remedies available under ERISA's exclusive civil enforcement scheme, Jordan seeks to recover damages under state common law theories of fraud and the tort of outrage, which are outside of ERISA's statutory framework. Plaintiff's state law claims are preempted and due to be dismissed.

In <u>Butero v. Royal Maccabees Life Insurance Company</u>, 174 F.3d 1207 (11th Cir. 1999), the Eleventh Circuit outlined as follows the four factors for establishing the complete preemption (or "superpreemption") of state law claims by ERISA:

> Here's the rule: ERISA superpreemption exists only when the "plaintiff is seeking relief that is available under 29 U.S.C. § 1132(a)." *Whitt,* 147 F.3d at 1330. Regardless of the merits of the plaintiff's actual claims (recast as ERISA claims), relief is available, and there is complete preemption, when four elements are satisfied. First, there must be a relevant ERISA plan. *See id.*; *Kemp v. International Business Machs. Corp.*, 109 F.3d 708, 713 (11th Cir. 1997). Second, the Plaintiff must have standing to sue under that plan. *See Engelhardt v. Paul Revere Life Ins. Co.*, 139 F.3d 1346, 1350 n.3 (11th Cir. 1998). Third, the defendant must be an ERISA entity. *See id.*; *Franklin v. QHG of Gadsden, Inc.,* 127 F.3d 1024, 1029 (11th Cir. 1997). Finally, the complaint must seek compensatory relief akin to that available under §1132(a); often this will be a claim for benefits due under a plan. *See Engelhardt,* 139 F.3d at 1354; *Franklin,* 127 F.3d at 1029.

<u>Butero</u>, 174 F.3d at 1212 (citation omitted).

Each of the four <u>Butero</u> complete preemption factors is satisfied by the allegations asserted in the Complaint: (1) Equity's health insurance plan is an ERISA "employee welfare benefit plan" as defined by ERISA Section 3(1)(29 U.S.C. § 1002 (1)), and, pursuant to ERISA

Section 4(a) (29 U.S.C. § 1003(a)), is governed by ERISA; see summary plan description attached as Exhibit 2; (2) as a participant in the plan at the time of his termination, Jordan has standing under ERISA Section 502(a) (29 U.S.C. § 1132 (a)) to bring claims under the plan for enforcement of plan terms, enjoinment of acts or practices that violate ERISA or plan terms, equitable relief to redress ERISA violations or to enforce ERISA or plan provisions, clarification of rights to future plan benefits, and/or recovery of plan benefits; (3) Equity is an ERISA entity because it was Jordan's employer; see Morstein v. National Ins. Servs., Inc., 93 F.3d 715 (11th Cir. 1996); and (4) the damages sought are akin to those available under § 1132(a), as his Complaint explicitly seeks damages for loss of health insurance coverage; see 29 U.S.C. § 1132(a) (1)(B) (allowing a plaintiff to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the plan.").

Jordan's artful characterization of his damages claims, purportedly cast in terms of outrageous conduct and fraud, cannot avoid their complete preemption by ERISA and must be dismissed. See York, supra (claim seeking return of plan premiums and reimbursement for medical costs caused by lapsed coverage in addition to damages such as emotional distress is akin to relief available under 29 § 1132(a)).

Besides complete preemption under ERISA Section 502(a) (29 U.S.C. § 1132(a)), ERISA also preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." ERISA Section 514(a)(29 U.S.C. § 1144(a)). Section 514(a) is "ERISA's express preemption provision" that "defeats claims that seek relief under state-law causes of action that 'relate to' an ERISA plan." Butero v. Royal Maccabees Life Ins. Co., 174 F. 3d 1207, 1212 & 1215 (11th Cir. 1999). Claims "relate to" an ERISA plan if they have "a

connection with or reference to" an employee benefits plan. Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47, 97 S. Ct. 1549, 1553, 97 L. Ed. 2d 39 (1987). See also Howard v. Parisian, 807 F.2d 1560, 1563-1564 (11th Cir. 1987) ("ERISA preempts all state laws insofar as they apply to employee benefit plans").

The Eleventh Circuit broadly interprets ERISA's expansive preemption clause. Swerhun v. Guardian Life Ins. Co. of Am., 979 F.2d 195 (11th Cir. 1992) ("ERISA is a comprehensive statute that subjects employee benefit plans to federal regulation… The Supreme Court has noted that the preemption clause 'is conspicuous for its breadth'… and has instructed that the clause should be 'expansively applied'") (citations omitted); First Nat'l Life Ins. Co. v. Sunshine-Junior Food Stores, Inc., 960 F.2d 1546, 1550 (11th Cir. 1992), *cert. denied*, 506 U.S. 1079 (1993) ("Congress used the words 'relates to' in their broad sense and did not mean to preempt only state laws specifically designed to affect employee benefit plans…A state law relates to an employee benefit plan if it 'has a connection with or reference to such a plan'") (citations omitted).[2]

State law claims such as fraud, outrage, and bad faith refusal to pay have repeatedly and unequivocally been determined to be preempted by ERISA in this Circuit. Young, supra; see also Gilbert v. Alta Health & Life Ins. Co., 276 F.3d 1292, 1299 (11th Cir. 2000) ("Alabama's

---

[2] See also Brown v. Connecticut Gen. Life Ins. Co., 934 F.2d 1193, 1196 (11th Cir. 1991) ("ERISA 'completely preempts' the area of employee benefits plans," therefore claims made under state law for benefits under an ERISA plan are converted to federal claims through ERISA 'super preemption') (citation omitted); Farlow v. Union Cent. Life Ins. Co., 874 F.2d 791, 794 (11th Cir. 1989) (A "state law cause of action 'relates to' an employee benefit plan if the [defendant's] conduct giving rise to such claim was not 'wholly remote in content' from the benefit plan"); Clark v. Coats & Clark, Inc., 865 F.2d 1237, 1243 (11th Cir. 1989) (ERISA preempts all state laws insofar as they "relate to" employee benefit plans, even if those laws only indirectly regulate the plans); Amos v. Blue Cross-Blue Shield of Ala.,868 F.2d 430, 431 (11th Cir. 1989), cert. denied, 493 U.S. 855, 110 S. Ct. 158 (1989) ("ERISA preemption is not a gateway but a barrier to state law causes of action, the effect of which is to completely displace state law claims."); Jackson v. Martin Marietta Corp., 805 F.2d 1498, 1499 (11th Cir. 1986) ("[S]tate laws found to be beyond the scope of § 1144(a) [ERISA's preemption clause] are few.").

tort [of] bad faith refusal to pay is not saved from preemption by ERISA's saving clause"); Walker v. Southern Co. Servs., Inc., et al., 279 F. 3d 1289, 1293 (11th Cir. 2002) (same); Wilcox v. Std. Ins. Co., 340 F. Supp. 2d 1266, 1275 (N.D. Ala. 2004) (same); Engelhardt v. Paul Revere Life Ins. Co., 139 F.3d 1346, 1354 (11th Cir. 1998) (putative state law fraud claim fell within scope of ERISA and was therefore preempted); Hall v. Blue Cross/Blue Shield of Alabama, 134 F.3d 1063, 1065 (11th Cir. 1998) ("claims for fraud and misrepresentation arising out of the failure to pay plan benefits are preempted by ERISA"); Brown v. Neely Truck Line, Inc., 884 F.Supp. 1534, 1537 (M.D. Ala. 1995) (fraud claims are preempted under ERISA).

As explained in detail above, Jordan's Complaint purports to set forth causes of action pursuant to the common law of the State of Alabama. However, on the face of the complaint, these state law claims "relate to" the Plan, are preempted and barred by the provisions of ERISA. [See Complaint, ¶ 7; Count One, ¶¶ 2, 3(b)].

In addition, Jordan's claims for extracontractual damages are not permitted pursuant to ERISA. Jordan's Complaint demands judgment against Defendants in the form of unspecified compensatory damages and punitive damages to be determined by a jury. See "Wherefore" clauses at the conclusion of each count of the Complaint. Jordan's claims for extracontractual damages should be stricken from the Complaint, as such damages are not recoverable under ERISA. Godfrey v. Bellsouth Telecomm., Inc., 89 F.3d 755, 761 (11th Cir. 1996) (the District Court did not err in holding that extra-contractual damages are not available in this case; a plan beneficiary can sue to enforce her rights under the plan and under ERISA, and for equitable relief, but not for punitive or compensatory damages.); Ingersoll-Rand Co. v. McClendon, 111 S. Ct. 478 (1990); McRae v. Seafarers' Welfare Plan, 920 F.2d 819, 822-23 (11th Cir. 1991), reh'g denied, 931 F.2d 901 (11th Cir. 1991). ERISA authorizes beneficiaries to bring actions to

13

enforce their rights under the plan, but does not provide for any extracontractual relief, such as punitive damages. Amos v. Blue Cross-Blue Shield of Ala., 868 F.2d 430 (11th Cir.), cert. denied, 493 U.S. 855, 110 S. Ct. 158, 107 L. Ed. 2d 116 (1989); Bishop v. Osborn Transp., Inc., 838 F.2d 1173, 1174 (11th Cir.), cert. denied, 488 U.S. 832, 109 S. Ct. 90, 102 L. Ed. 2d 66 (1988).

### D. Jordan's Claims Against Jennifer Baker and Randy Cline Should Be Dismissed

Jordan specifies no claims against Defendants Jennifer Baker and Randy Cline, employees of Equity. The gravamen of his Complaint is that Equity improperly terminated his employment and his health insurance benefits. Permitting a plaintiff to simply name individual employees as defendants without any stated basis violates any standard of pleading. See Butero, 174 F.3d 1207, footnote 2. Accordingly, Jordan's claims against Baker and Cline are due to be dismissed.

### E. Jordan Is Not Entitled to a Jury Trial on His ERISA Claims

Finally, Jordan's Complaint includes a jury demand on all claims. [Complaint at p. 4.] The Eleventh Circuit, however, has routinely held that Plaintiffs are not entitled to a jury trial pursuant to ERISA. Stewart v. KHD Deutz of Am. Corp., 75 F.3d 1522, 1527 (11th Cir. 1996), cert. denied, 117 S. Ct. 300 (1996) (no Seventh Amendment right to a jury trial exists in actions brought pursuant to ERISA); Blake v. Unionmutual Stock Life Ins. Co. of Am., 906 F.2d 1525, 1526 (11th Cir. 1990) (holding that beneficiaries were not entitled to a jury trial on their ERISA claim for benefits under group health policy); Howard v. Parisian, Inc., 807 F.2d 1560, 1567 (11th Cir. 1987) (stating that the former Fifth Circuit squarely held that Plaintiffs in actions under 29 U.S.C. § 1132(a)(1)(B) are not entitled to a trial by jury); Chilton v. Savannah Foods &

Indus., Inc._,_ 814 F.2d 620, 623 (11th Cir. 1987) (former employee seeking to recover benefits under ERISA was not entitled to a jury trial); East v. B.L. Long_,_ 785 F. Supp. 941, 942 (N.D. Ala. 1992) (this court is bound to follow the current holdings of the Eleventh Circuit that Plaintiffs in ERISA cases are not entitled to trial by jury); see also Frados v. Cont'l Cas. Co_.,_ 363 F. Supp. 2d 1349, 1355 (S.D. Fla. 2005) (notwithstanding plaintiff's reference to money damages, plaintiff had no recourse to a jury under ERISA in an action seeking long-term disability benefits).

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully request that this Court dismiss this case in its entirety, including Jordan's claims for extracontractual damages relating to his loss of health insurance benefits, and to strike Jordan's demand for a jury trial as to his ERISA claims.

_/s/ Joel P. Smith, Jr._____
Joel P. Smith, Jr. (SMI 192)
Williams, Potthoff, Williams & Smith, LLC
125 South Orange Avenue
Eufaula, Alabama 36027
joelpsmith@bellsouth.net
(334) 687-5834

**OF COUNSEL:**
Howard A. Rosenthal
Patrick J. Doran
Pelino & Lentz, P.C.
One Liberty Place
Thirty-Second Floor
1650 Market Street
Philadelphia, PA 19103-7393
(215) 665-1540

CERTIFICATE OF SERVICE

      I hereby certify that on the 10th day of March, 2008 I served the foregoing upon counsel of record for all parties to this proceeding via the Court's CM/ECF electronic filing notification system:

Walter Calton, Esq.
212 East Broad St.
Eufaula, AL 36027

Leah Taylor, Esq.
Taylor & Taylor
2130 Highland Avenue
Birmingham, AL 35205

Shane Seaborn, Esq.
Penn & Seaborn
P.O. Box 688
Clayton, AL 36016

                                                     */s/ Joel P. Smith, Jr.*
                                                     Of Counsel

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| ROGER JORDAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. |
| ) | 2:08-cv-00152-MEF-TFM |
| EQUITY GROUP EUFAULA DIVISION, LLC, ) | |
| JENNIFER BAKER and RANDY CLINE ) | |
| ) | |
| Defendants. ) | |

**MOTION TO STRIKE PLAINTIFF'S DISCOVERY**

Defendants respectfully move the Court to strike the Plaintiff's deposition notices and discovery requests to Defendants. As grounds therefore, Defendants show unto the Court as follows:

1. Plaintiff served the following discovery requests and deposition notices with the Complaint: First Request for Documents to Defendant Equity Group Eufaula Division, LLC; 30(b)(6) Notice of Deposition to Defendant Equity Group Eufaula Division, LLC; Notice of Deposition to Defendant Jennifer Baker; and Notice of Deposition to Defendant Randy Cline.

2. Pursuant to Federal Rule of Civil Procedure 26(d), "a party may not seek discovery from any source before the parties have met and conferred as required by subdivision (f)."

3. The parties have not held the Rule 26(f) meeting of parties.

4. Accordingly, Plaintiff's discovery requests are premature and due to be stricken.

WHEREFORE, premises considered, Defendants respectfully request that the Court

strike Plaintiff's outstanding discovery requests and notices of deposition directed to these Defendants.

                                          /s/ *Joel P. Smith, Jr.*_____
                                          Joel P. Smith, Jr. (SMI 192)
                                          Williams, Potthoff, Williams & Smith, LLC
                                          125 South Orange Avenue
                                          Eufaula, Alabama 36027
                                          joelpsmith@bellsouth.net
                                          (334) 687-5834

**OF COUNSEL:**
Howard A. Rosenthal
Patrick J. Doran
Pelino & Lentz, P.C.
One Liberty Place
Thirty-Second Floor
1650 Market Street
Philadelphia, PA 19103-7393
(215) 665-1540

## CERTIFICATE OF SERVICE

      I hereby certify that on the 10th day of March, 2008 I served the foregoing upon counsel of record for all parties to this proceeding via the Court's CM/ECF electronic filing notification system:

    Walter Calton, Esq.
    212 East Broad St.
    Eufaula, AL 36027

    Leah Taylor, Esq.
    Taylor & Taylor
    2130 Highland Avenue
    Birmingham, AL 35205

    Shane Seaborn, Esq.
    Penn & Seaborn
    P.O. Box 688
    Clayton, AL 36016

                                                     /s/ *Joel P. Smith, Jr*_____
                                                     Of Counsel