IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ROGER JORDAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. |
| v. | § | |
| | § | 2:08cv152-MEF |
| EQUITY GROUP EUFAULA DIVISION, | § | |
| LLC; JENNIFER BAKER; RANDY | § | |
| CLINE, et al, | § | |
| | § | |
| Defendants. | § | |

**MOTION TO REMAND**

Comes now the Plaintiff, Roger Jordan, and moves this Court pursuant to 28 U.S.C. § 1447(c) for an order remanding this cause to the Circuit Court of Barbour County, Alabama, Clayton Division. In support thereof, Plaintiff states as follows:

**Procedural Background**

On and prior to November 21, 2007, Plaintiff was employed by Defendant Equity Group Eufaula Division, LLC. (hereinafter "Equity Group"). (Complaint ¶5). Equity Group is a poultry processing plant located in Eufaula, Alabama. (Notice of Removal ¶3). Defendants Jennifer Baker and Randy Cline are management employees at Equity Group. On November 20, 2007, Plaintiff suffered a catastrophic injury while jumping on a trampoline. (Complaint ¶6). As a result of the injury, Plaintiff was rendered a quadriplegic. (Complaint ¶6).

After learning of Plaintiff's devastating injury, Defendants terminated Plaintiff's employment and cancelled his health insurance coverage and other benefits. (Complaint ¶7). Plaintiff alleges that Defendants' termination of his employment after he had suffered a devastating injury was for pretextual reasons and was in violation of public policy and was done cruelly and maliciously. (Complaint ¶8).

On January 31, 2008, Plaintiff filed a complaint against Equity Group, Baker and Cline in the Circuit Court of Barbour County, Alabama, Clayton Division. Plaintiff's complaint asserted Alabama state law claims for wrongful termination and outrageous conduct. On March 4, 2008, Defendants improperly removed the state court action from the Circuit Court of Barbour County to this Court pursuant to 28 U.S.C. § 1446. Defendants removed this case pursuant to 28 U.S.C. § 1441, arguing that Plaintiff's claims are subject to complete preemption under Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a) and Section 502(a) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 101, et seq.

### Standard Regarding Removal

It is well-settled that removal must be based upon the existence of a federal district court's original jurisdiction of a state court action. 28 U.S.C. § 144(a); <u>Caterpillar, Inc. v. Williams</u>, 482 U.S. 386, 391-392 (1987). Defendants bear the burden

-2-

of establishing this Court's subject matter jurisdiction. Laughlin v. Prudential Insurance Co., 882 F.2d 187 (5th Cir. 1989); Lowe v. Ingalls Shipbuilding, 723 F.2d 1173 (5th Cir. 1984).  A defendant may remove a civil action from state court to federal court provided that the federal court has original jurisdiction over plaintiff's claims.  28 U.S.C. § 1441(a).  The propriety of Defendants' removal on federal question grounds depends upon whether any of the Plaintiffs' claims arise under federal law, thereby giving this Court original federal question jurisdiction over the claims.  See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

Whether a claim arises under federal law so as to confer federal question jurisdiction under 28 U.S.C. § 1331 is governed by the "well-pleaded complaint" rule, which provides that "federal jurisdiction exists only when a federal question is presented on the face of plaintiff's properly pleaded complaint." Caterpillar, 482 U.S. at 392.  Because the "well-pleaded complaint" rule provides for the determination of jurisdiction solely on the basis of plaintiff's complaint, the rule makes the plaintiff master of the claim, and federal jurisdiction may be avoided by exclusive reliance on state law.  Id.  If, on its face, the plaintiff's complaint raises no issue of federal law, federal question jurisdiction is lacking. Franchise Tax Bd. v. Laborers Vacation

Trust, 463 U.S. 1, 10 (1983). The fact that Plaintiff has asserted only state law claims is not disputed by Defendants. Moreover, no issue of federal law is raised on the face of the Plaintiff's Complaint. As such, federal jurisdiction is lacking, and the case is due to be remanded.

**I.    Plaintiff's State Law Claims Are Not Preempted by the Labor Management Relations Act.**

Defendants contend in their notice of removal, without any evidentiary support, that Plaintiff, Roger Jordan, is a member of the Retail, Wholesale and Department Store Union and subject to a Collective Bargaining Agreement (CBA) between Equity Group and the Union.[1]  (Notice of Removal ¶6).  Defendants contend that Plaintiff's outrage and wrongful termination state law claims are substantially dependent on an analysis of the CBA, and therefore completely preempted by Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a).  Plaintiff's state law claims are not preempted by the LMRA.

Section 301(a) of the LMRA provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the

---

[1] Defendants did not attach a copy of the Collective Bargaining Agreement to their Notice of Removal.  Nor did Defendants offer any evidence that Jordan was, in fact, a member of the Union.

>    amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). The Supreme Court has held that § 301 authorizes federal courts "to fashion a body of federal common law to be used to address disputes arising out of labor contracts." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 209 (1985). As a result, "[a] state rule that purports to define the meaning or scope of a term in a contract suit therefore is preempted by federal labor law." Id. at 210. The Court has made it clear, however, that "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is preempted by § 301 or other provisions of the federal labor law." Id. at 211. Indeed, preemption arises only when an "evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." Id. at 213. A plaintiff's claim is the touchstone for preemption analysis; a defense based on the terms of a CBA is not enough to require preemption. "As long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 preemption purposes." Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 410 (1988).

The issue of preemption pursuant to the LMRA in a retaliatory discharge case was addressed by the Supreme Court in Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 410 (1988). In that case, an employee brought a retaliatory discharge claim after his

employer, who accused him of filing a false worker's compensation claim, fired him pursuant to a "just cause" provision of a collective bargaining agreement. 486 U.S. at 401. The Court held that application of the state tort remedy was not preempted by § 301 of the LMRA. Id. In reaching that conclusion, the Court first evaluated the elements of the state tort action and noted that to show retaliatory discharge, the plaintiff must set forth sufficient facts from which it can be inferred that (1) he was discharged or threatened with discharge and (2) the employer's motive in discharging him was to deter him from exercising his rights or to interfere with his exercise of those rights. Id. at 407. The Court in Lingle explained that each of these purely factual questions pertained to the conduct of the employee and the conduct and motivation of the employer. Neither of the elements required a court to interpret any term of a collective-bargaining agreement. To defend against a retaliatory discharge claim, an employer must show that it had a nonretaliatory reason for the discharge; this purely factual inquiry likewise does not turn on the meaning of any provision of a collective-bargaining agreement. "Thus, the state-law remedy in this case is "independent" of the collective-bargaining agreement in the sense of "independent" that matters for 301 preemption purposes: resolution of the state-law claim does not require construing the collective-bargaining agreement." 486 U.S. at 407.

In fact, the Court held in <u>Lingle</u> that a retaliatory discharge claim is not preempted by § 301 even if the resolution of that claim requires the same factual inquiry as the CBA grievance procedure for unjust discharge:

> We agree with the [lower] court's explanation that the state-law analysis might well involve attention to the same factual considerations as the contractual determination of whether [the plaintiff] was fired for just cause. But we disagree with the court's conclusion that such parallelism renders the state-law analysis dependent upon the contractual analysis.... [Section] 301 preemption merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements. In other words, even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for § 301 preemption purposes.

<u>Id</u>. at 409-410 (footnotes omitted).  See also <u>Pilkington v. United Airlines</u>, 112 F.3d 1532 (11th Cir. 1993).

Moreover, a claim of intentional infliction of emotional distress in the workplace will avoid preemption if the employer's outrageous conduct violates its duty "to every member of society, not just to employees covered by the collective bargaining agreement." <u>Hanks v. General Motors Corp.</u>, 906 F.2d 341, 344 (8th Cir. 1990).  To make a proper preemption determination on a claim of this sort, "the factual background of the entire case must be examined against an analysis of the state tort claim to determine

whether the provisions of the collective bargaining agreement come into play. Id. at 70.

Recognizing that litigating a state law retaliatory discharge claim presents purely factual questions pertaining to the "conduct of the employee and the conduct and motivation of the employer," and that neither requires "a court to interpret any term of a collective-bargaining agreement," Id. at 407, Lingle makes clear that Plaintiff's outrage and wrongful termination claims in this case do not lend themselves to the doctrine of preemption. Plaintiff's state-law complaint does not refer to the CBA or allege a breach of contract. Rather, Plaintiff alleges that Defendants engaged in outrageous conduct and committed tortious discharge in violation of Alabama's public policy.

The cause of action for tortious discharge in violation of public policy is a substantive right that Alabama grants to its workers independent of any employment contract. Wyatt v. Bellsouth, Inc., 998 F.Supp. 1303 (M.D. Ala. 1998); Lees v. Sea Breeze Health Care Center, Inc., 391 F.Supp.2d 1103 (S.D. Ala. 2005). Section 301 does not preempt claims to vindicate such nonnegotiable state law rights. Romero v. San Pedro Forklift, Inc., 2008 U.S. App. LEXIS 2607 (9th Cir., Feb. 1, 2008).

To prevail on his claim of intentional infliction of emotional distress under Alabama law, Plaintiff must prove that extreme emotional distress was proximately caused by Defendants' outrageous

conduct, that is, conduct "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. American Road Serv. Co. v. Inmon, 394 So. 2d 361, 365 (Ala. 1980). Review of pertinent Alabama authorities reveals that the line of demarcation between non-actionable outrage claims and actionable outrage claims in the employment arena is found in the determination of whether the termination is for reasons that contravene public policy. In Harrell v. Reynolds Metals Co., 495 So. 2d 1381 (Ala. 1986), for example, the Alabama Supreme Court said:

> It would be intolerable in a civilized society to hold that an employer is guilty of outrageous conduct for merely discharging an employee at will. That is what the plaintiff is asking this Court to do, for the termination is not for a reason which contravenes public policy, and there is no evidence that the termination was accompanied **with the sound of fury**.

495 So.2d at 1387.

Where a plaintiff complains that his discharge contravenes public policy, he may properly pursue a claim of outrage because the violation of public policy furnishes the requisite "sound of fury" to accompany the termination. Wal-Mart Stores, Inc. v. Smitherman, 872 So.2d 833, 840 (Ala. 2003)(outrage claim not cognizable if termination is "not for a reason which contravenes public policy," and if termination was not accompanied with "sound of fury"). See also Wyatt v. BellSouth, Inc., 998 F. Supp. 1303, 1312 (M.D. Ala. 1998) (under Alabama law, "the discharge of an

employee rises to the level of the tort of outrage only if the discharge violates public policy").

Plaintiff's state law claims in this case are independent of the CBA. Resolution of the state-law claims do not require construction of the CBA. Therefore, Plaintiff's state law claims are not preempted by the Labor Management Relations Act. Plaintiff's motion to remand is due to be granted.

**II. Plaintiff's State Law Claims Are Not Preempted by ERISA.**

Defendants also argue that because Plaintiff's claims "relate to" the improper termination of his health insurance benefits that his claims are completely preempted by the Employee Retirement Security Act of 1974, 29 U.S.C. ¶¶ 1001, et seq ("ERISA"). Complete preemption, a narrow exception to the well-pleaded complaint rule, derives from judicial interpretation of ERISA's enforcement provision, 29 U.S.C. § 1132(a). Cotton v. Mass Mutual Life Insurance Co., 402 F.3d 1267, 1281 (11th Cir. 2005); Kemp v. International Business Machinery Corp., 109 F.3d 708, 712 (11th Cir. 1997). Complete preemption applies where "Congress preempts an area of law so completely that any complaint raising claims in that area is necessarily federal in character and therefore necessarily presents a basis for federal jurisdiction. In re Managed Care, 298 F.Supp.2d 1259, 1288 (S.D. Fla. 2003). "[I]f a state law claim is in fact properly one that arises under ERISA's enforcement

provisions, e.g., a claim for [plan] benefits, ERISA's complete preemption should apply." Id. at 1289.

In order for a state law claim to be subject to complete preemption such that federal question jurisdiction exists to support removal, however, four elements must be present: (1) a relevant ERISA plan is implicated; (2) the plaintiff has standing to sue under ERISA; (3) the defendant is an ERISA entity; and (4) the complaint seeks relief akin to what is available under Section 502. Cotton, 402 F.3d at 1281 (quoting Butero v. Royal Maccabees Life Insurance Co., 174 F.3d 1207, 1212 (11th Cir. 1999)). The removing party bears the burden of demonstrating complete preemption and, where jurisdiction is not absolutely clear, the Eleventh Circuit favors remand of removed cases. Oskars, Inc. v. Bennett & Co., Inc., 132 F.Supp. 1333, 1334 (M.D. Ala. 2001)(granting motion to remand because plan not governed by ERISA). Even though it is Defendants' burden ***to provide facts*** justifying removal, Hobbs v. Blue Cross Blue Shield of Alabama, 276 F.3d 1236, 1242 (11th Cir. 2001), Defendants instead merely state that ERISA completely preempts this action because Plaintiff expressly claims that he was damaged by his loss of health insurance coverage and medical treatments and services, which falls squarely within the reach of ERISA.

Defendants did not meet their burden of establishing the four elements necessary for complete preemption.[2] Defendants did not explain how the required elements are satisfied. Defendants Baker and Cline are not ERISA entities. Defendants failed to establish that Plaintiff has standing to assert his outrage and wrongful termination claims for relief under ERISA and that Plaintiff's claims seek relief akin to that available under ERISA. Butero, 174 F.3d at 1212; Cotton, 402 F.3d at 1288-89.

Defendants summarily state in the Notice of Removal that "as a participant in the plan at the time of his termination, Jordan has standing to assert a variety of claims under § 1332(a)." Under § 1002(7) of ERISA, "participant" is defined as "any employee or former employee ... who is or may become eligible to receive a benefit of any type from an employee benefit plan ...." 29 U.S.C. § 1002(7). In Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101 (1989), the Supreme Court further defined this term, stating, with regard to former employees, that "participant" is "naturally read to mean ... former employees who 'have ... a reasonable expectation of returning to covered employment' or who have 'a colorable claim' to vested benefits." Id. at 117 (citations omitted). The Court defined a "colorable claim to vested benefits" as a colorable claim that (1) the person will "prevail in a suit for benefits, or that

---

[2]Defendants did not attach a copy of the alleged ERISA Plan to their Notice of Removal.

-12-

(2) eligibility requirements will be fulfilled in the future." Id. at 117-18. Plaintiff's employment was terminated after he had suffered a devastating injury. There is no evidence that Plaintiff has standing to assert claims under ERISA.

Finally, the relief Plaintiff seeks is unavailable under ERISA. Plaintiff seeks damages for the severe mental anguish, emotional distress, despair and frustration that he has undergone as a result of Defendant's wrongful conduct in terminating his employment after he suffered a devastating injury while off the job. Plaintiff does not seek to recover benefits or enforce rights under the terms of any ERISA plan.

In Engelhardt v. The Paul Revere Life Ins. Co., 139 F.3d 1346, 1353 (11th Cir. 1998), the Eleventh Circuit considered whether the relief sought in a state law complaint was akin to that available under § 502(a), 29 U.S.C. § 1132(a)(1)(B). There the court found the plaintiff's common law fraudulent inducement claim was completely preempted because it was "essentially a challenge to Paul Revere's refusal to pay benefits." The Eleventh Circuit noted that the plaintiff was alleging, in effect, that the measure of his compensatory damages was the amount of benefits wrongfully withheld by the insurance company. Id. By that measure, the plaintiff was seeking relief akin (if not identical) to that which was available to him under § 1132(a). Consequently, his claim under state law was completely preempted. See Butero, 174 F.3d at 1212 (relief

available under ERISA typically is a claim for benefits under the applicable plan). In this case, Plaintiff does not seek to recover benefits or enforce rights under the terms of any ERISA plan.

Defendants did not demonstrate all of the necessary elements for complete preemption by ERISA. This Court lacks subject matter jurisdiction and must remand the case.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Roger Jordan, prays that this Honorable Court will remand this action to the state court where it was originally filed. Plaintiff also requests payment of just costs, actual expenses and attorneys' fees associated with the removal.

Respectfully submitted,

/s/ Leah O. Taylor
Leah O. Taylor

**OF COUNSEL:**
TAYLOR & TAYLOR
2130 Highland Avenue
Birmingham, Alabama 35205
Telephone: (205) 558-2800
lotaylor@taylorlawyers.com

Shane Seaborn
sseaborn1@yahoo.com
Penn & Seaborn LLC
Post Office Box 688
Clayton, Alabama 36016
Telephone: (334) 775-9778

Walter B. Calton
wcalton@bellsouth.net
Post Office Box 696
Eufaula, Alabama 36027
Telephone: (334) 687-2407

**CERTIFICATE OF SERVICE**

    I hereby certify that I have electronically filed this Motion so that service will be sent by the ECMF System via electronic mail to the following on this the 3rd day of April, 2008:

Courtney R. Potthoff
cpotthoff@mindspring.com

Joel P. Smith, Jr.
joelpsmith@bellsouth.net

Williams, Potthoff, Williams & Smith
Post Office Box 880
Eufaula, Alabama 36072
334-687-5834

Howard A. Rosenthal
harosenthal@pelino.com

Pelino & Lentz, P.C.
1650 Market Street
One Liberty Place, 32nd Floor
Philadelphia, Pennsylvania 19103

                                      /s/ Leah O. Taylor
                                      Leah O. Taylor