IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ROGER JORDAN, § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> EQUITY GROUP EUFAULA DIVISION, § <br> LLC; JENNIFER BAKER; RANDY § <br> CLINE, et al, § <br> § <br> Defendants. § | CIVIL ACTION NO. <br><br> 2:08cv152-MEF |

**PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION
TO PLAINTIFF'S MOTION TO REMAND**

Comes now the Plaintiff, Roger Jordan, and in response to Defendants' opposition to Plaintiff's motion to remand, says as follows:

**I.   Plaintiff's State Law Claims Are Not Preempted by the Labor Management Relations Act.**

Section 301 of the Labor Management Relations Act vests jurisdiction in federal courts over suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce.  29 U.S.C. § 185 (a). "The Supreme Court has repeatedly admonished that § 301 preemption is not designed to trump substantive and mandatory state law regulation of the employee-employer relationship; § 301 has not become a 'mighty oak' that might supply cover to employers from all substantive aspects of state law." Humble v. Boeing Co., 305 F.3d 1004, 1007 (9th Cir. 2002)(*citing* Lingle v. Norge Div. of Magic

Chef, Inc., 486 U.S. 399, 408 (1988); Livadas v. Bradshaw, 512 U.S. 107, 122 (1994)). Thus, not every claim which requires a court to refer to the language of a labor-management agreement is necessarily preempted. Moreover, the presence of a § 301 question in a "defensive" argument does not overcome the paramount policies embodied in the well-pleaded complaint rule. As the United States Supreme Court recognized in Caterpillar, Inc. v. Williams, 482 U.S. 386 (1987):

> It is true that when a defense to a state claim is based on the terms of a collective-bargaining agreement, the state court will have to interpret that agreement to decide whether the state claim survives. But the presence of a federal question, even a § 301 question, in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule -- that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court. When a plaintiff invokes a right created by a collective-bargaining agreement, the plaintiff has chosen to plead what we have held must be regarded as a federal claim, and removal is at the defendant's option. But a defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated. If a defendant could do so, the plaintiff would be master of nothing. Congress has long since decided that federal defenses do not provide a basis for removal.

482 U.S. at 391-392.

Resolution of Plaintiff's outrage and wrongful termination claims focuses on the motivation of his employer and does not involve interpretation of the collective bargaining agreement.

Plaintiff's outrage and wrongful termination claims in this case do not lend themselves to the doctrine of preemption. Plaintiff's state-law complaint does not refer to or implicate the collective bargaining agreement. Rather, Plaintiff alleges that Defendants engaged in outrageous conduct and committed tortious discharge in violation of Alabama's public policy. <u>Romero v. San Pedro Forklift, Inc</u>., 2008 U.S. App. LEXIS 2607 (9th Cir., Feb. 1, 2008).

**A.  The Cases Relied on by the Defendants Are Distinguishable on Their Facts and Do Not Establish that Plaintiff's Claims Are Preempted.**

Defendants argue that:

> Alabama courts have made clear that an employee subject to a collective bargaining agreement, such as Jordan, has <u>no</u> possible state law remedy for claims relating to a discharge, benefits or other rights governed by the terms of the collective bargaining agreement.

(Defendants' Memorandum of Law, p. 9)(emphasis original). Defendants rely on <u>Rasheed v. International Paper Co.</u>, 826 F.Supp. 1377 (S.D. Ala. 1993), <u>Bolton v. McWane Cast Iron & Pipe Co.</u>, 328 F.Supp.2d 1229 (N.D. Ala. 2004) and <u>Vines v. Sloss Industries Corp</u>., 1996 U.S. Dist. LEXIS 22504 (N.D. Ala., Nov. 25, 1996), to support their argument. However, the cases do not stand for the proposition that an employee subject to a collective bargaining agreement, such as Jordan, has <u>no</u> possible state law remedy for claims relating to a discharge, benefits or other rights governed by the terms of the collective bargaining agreement. The cases

relied on by the Defendants are distinguishable on their facts and do not establish that this case is preempted.

In Rasheed v. International Paper Co., 826 F.Supp. 1377 (S.D. Ala. 1993), Rasheed contended that he was discriminated against because of his race, religion and in retaliation for filing a complaint against his employer with the EEOC. He also contended that his employer breached a contract that allegedly existed between them by taking into consideration portions of his disciplinary history when making the decision to discharge him. Following his discharge, Rasheed directed the union to file a grievance for him, concerning his discharge, under the grievance procedures of the collective bargaining agreement. An arbitration proceeding took place, and the arbitrator's decision was adverse to Rasheed.

With respect to Rasheed's breach of contract claim, the court noted that "[i]t is settled law that the claims which allege **breach of a collective bargaining agreement**, such as that which governed the wages, hours, and terms and conditions of Rasheed's employment are preempted by 301 of the Labor Management Relations Act." 826 F.Supp. at 1383 (emphasis added). With respect to Plaintiff's discrimination claims, the court held:

> To the extent, however, that plaintiff is attempting to redress IP's alleged racial discrimination of him by counts six and seven, those counts are not preempted by § 301 and are not due to be dismissed at this time. That is so because the claims, thus characterized, "can be resolved without interpreting the agreement itself" and

> "turn on purely factual questions not touching upon the terms of the collective bargaining agreement."

826 F.Supp. at 1385 (citations omitted)

This case is distinguishable from <u>Rasheed</u> because Plaintiff is not alleging a breach of the collective bargaining agreement. Resolution of Plaintiff's outrage and wrongful termination claims would not entail interpretation or application of the collective bargaining agreement.

The case of <u>Bolton v. McWane Cast Iron & Pipe Co.</u>, 328 F.Supp.2d 1229 (N.D. Ala. 2004), is also distinguishable. In that case, Bolton filed a negligence action against his employer. Bolton's employment was subject to the terms and conditions of a collective bargaining agreement. Bolton contended that he was required to work a total of 14 hours in a 24-hour period. He objected to the additional work and told his employer he was exhausted. On his way home from working the 14-hour shift, Bolton drove his car off the road and was seriously injured. Bolton contended that his injuries were due to the negligence of his employer in requiring him to work 14 hours in a 24-hour period.

The employer removed the case to federal court arguing that Bolton's negligence claim was preempted by the Labor Management Relations Act. The employer contended:

> Count Two is a claim for negligence requiring Plaintiff to demonstrate that McWane, whether through its agents or otherwise, had a duty to act in a certain way. McWane contends that a determination of the existence and parameters of that duty depends on the terms of the CBA.

> McWane insists that "Plaintiff's negligence claim is "inextricably intertwined" with the management's rights clause and the hours worked and overtime provisions set forth in the CBA.

328 F.Supp. at 1234 (citations omitted).

The collective bargaining agreement specifically addressed overtime. It provided that the employer had the "right to schedule overtime work for the plant, its departments and various groups of employees." The district court held that since there was no independent state law duty available to plaintiff, an evaluation of his claim would by necessity involve a determination of whether the provision and other provisions of the collective bargaining agreement implied a duty of care in scheduling overtime so as to avoid injury to employees. 328 F.Supp.2d at 1235. Bolton's negligence claim was not sufficiently independent of the collective bargaining agreement. The claim was inextricably intertwined with the consideration of the terms of the collective bargaining agreement and was, therefore, preempted by § 301.

This case is distinguishable from <u>Bolton</u> because Plaintiff's outrage and wrongful termination claims are sufficiently independent of the collective bargaining agreement. The claims are not inextricably intertwined with consideration of any terms of the collective bargaining agreement.

Finally, the case of <u>Vines v. Sloss Industries Corp</u>., 1996 U.S. Dist. LEXIS 22504 (N.D. Ala., Nov. 25, 1996), relied on by the Defendants is also distinguishable. In fact, the district court

specifically recognized that the "peculiar nature of this case" is such that the causation element of plaintiff's claim will require interpretation of the collective bargaining agreement. The peculiar nature of the case was that the employee contended that he had the right, under the collective bargaining agreement, to return to work if he could perform the job within two years of the start of his leave of absence. In contrast, the employer argued that the plaintiff did not "return to work" within the meaning of the collective bargaining agreement because he was unable to perform his former job within that two year period. The federal district court held that under the facts of that case, plaintiff's claims were preempted:

> The Court is convinced that this dispute about plaintiff's rights under the CBA is much more than merely "tangential" to plaintiff's claim. In fact, the central issue that the parties appear to want to litigate is whether plaintiff was entitled to return to work under the CBA. Because plaintiff's retaliation claim will involve a substantial issue of construction and operation of the CBA, plaintiff's claim is preempted by § 301.

1996 U.S. Dist. LEXIS 22504, * 11.

<u>Vines</u> is specifically limited to the peculiar facts of the case. The employer and employee were arguing over specific terms of the collective bargaining agreement.

The cases relied on by the Defendants are distinguishable on their facts and do not establish that Plaintiff's outrage and wrongful termination claims are preempted.

**B.    This Court Should Not Consider the Declaration of Kathy Gilmore Filed in Opposition to Plaintiff's Motion to Remand Nor Any of Its Attached Exhibits**

Plaintiff noted in his motion to remand that Defendants' contention that he was a member of the Retail, Wholesale and Department Store Union and subject to a Collective Bargaining Agreement was not supported by any evidentiary basis. The Declaration of Kathy Gilmore and its attachments filed in opposition to Plaintiff's motion for remand is improper and should not be considered by the Court. It raises factual arguments which are not necessary to the disposition of the motion to remand, and the Court is limited to determining whether the case is removable from the complaint and the notice of removal which provide adequate information upon which to determine the motion. 28 U.S.C. 1447(c).

However, even if this Court should consider the Gilmore Declaration, the Declaration offers evidence regarding the motivation of Plaintiff's employer. The Declarations of Roger Jordan and Jeanette Jordan filed by the Plaintiff also offers evidence regarding Defendant's motivation. The Declarations clearly establish that resolution of Plaintiff's outrage and wrongful termination claims focuses on Defendant's motivation and does not involve interpretation of the collective bargaining agreement.

**II. Plaintiff's State Law Claims Are Not Preempted by ERISA.**

Defendants appear to concede that Plaintiff's state law claims are not preempted by ERISA based on their meager response to Plaintiff's motion to remand with respect to ERISA. Defendants did not meet their burden of establishing the four elements necessary for complete preemption. Defendants did not explain how the required elements are satisfied. Defendants failed to establish that Plaintiff has standing to assert his outrage and wrongful termination claims for relief under ERISA and that Plaintiff's claims seek relief akin to that available under ERISA. Butero v. Royal Maccabees Life Insurance Co., 174 F.3d 1207, 1212 (11th Cir. 1999); Cotton v. Mass Mutual Life Insurance Co., 402 F.3d 1267, 12888 (11th Cir. 2005).

Defendants also mischaracterize Plaintiff's claims. Plaintiff is not, as Defendants contend, seeking damages for loss of health insurance benefits against Equity. Plaintiff does not seek to recover benefits or enforce rights under the terms of any ERISA plan. Plaintiff's state law outrage and wrongful termination claims are not preempted by ERISA.

## Conclusion

Defendants criticize Plaintiff for not responding to their motion to dismiss which was filed after the case was removed to this Court. Any substantive rulings on any motion to dismiss or motion for summary judgment by this Court are inappropriate until

the Court determines whether it has subject matter jurisdiction over this action. <u>University of South Alabama v. American Tobacco Co.</u>, 168 F.3d 400, 405 (11th Cir. 1999). Defendants' motion to dismiss may be moot, depending on this Court's determination regarding remand. Plaintiff reserves the right to respond to Defendants' motion to dismiss after this Courts determination as to jurisdiction.

    WHEREFORE, PREMISES CONSIDERED, Plaintiff, Roger Jordan, prays that this Honorable Court will remand this action to the state court where it was originally filed.

                              Respectfully submitted,

                              /s/ Leah O. Taylor
                              Leah O. Taylor

**OF COUNSEL:**
TAYLOR & TAYLOR
2130 Highland Avenue
Birmingham, Alabama 35205
Telephone: (205) 558-2800
lotaylor@taylorlawyers.com

Shane Seaborn
sseaborn1@yahoo.com
Penn & Seaborn LLC
Post Office Box 688
Clayton, Alabama 36016
Telephone: (334) 775-9778

Walter B. Calton
wcalton@bellsouth.net
Post Office Box 696
Eufaula, Alabama 36027
Telephone: (334) 687-2407

**CERTIFICATE OF SERVICE**

    I hereby certify that I have electronically filed this Motion so that service will be sent by the ECMF System via electronic mail to the following on this the 22nd day of April, 2008:

Courtney R. Potthoff
cpotthoff@mindspring.com

Joel P. Smith, Jr.
joelpsmith@bellsouth.net

Williams, Potthoff, Williams & Smith
Post Office Box 880
Eufaula, Alabama 36072
334-687-5834

Howard A. Rosenthal
harosenthal@pelino.com

Pelino & Lentz, P.C.
1650 Market Street
One Liberty Place, 32nd Floor
Philadelphia, Pennsylvania 19103

                                       /s/ Leah O. Taylor
                                       Leah O. Taylor

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ROGER JORDAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:08cv152-MEF |
| | ) |
| EQUITY GROUP-EUFAULA DIVISION, LLC, | ) |
| JENNIFER BAKER and RANDY CLINE, | ) |
| | ) |
| Defendants. | ) |

### AFFIDAVIT OF ROGER JORDAN

Roger Jordan, being duly sworn according to law, deposes and states as follows:

1. On November 15, 2007, I was working at my job with the Equity Group - Eufaula Division LLC ("Equity") when I was told by a supervisor to go see Kathy Gilmore in the Human Resources Department.

2. When I met with Kathy Gilmore on November 15, 2007, she told me I was being suspended from work for three days because a pay check I had previously reported as lost had been cashed. I did not cash the pay check I had reported as lost and I told Kathy Gilmore that I did not cash it.

3. Despite this, Kathy Gilmore gave me a letter of suspension and told me to call her on November 20, 2007 which was the third day of my suspension.

4. As instructed, I called Kathy Gilmore on November 20, 2007. Kathy Gilmore said she was still investigating the

cashing of the lost pay check and that at that time, she was unable to determine who had cashed the lost check at WalMart. In that same phone conversation, Kathy Gilmore also told me she was going to review the surveillance video tape she had obtained from WalMart before completing her investigation. Kathy Gilmore then told me to call her back on November 21, 2007. At no point during that phone conversation on November 20, 2007 did Kathy Gilmore terminate my employment with Equity.

    5. On the afternoon of November 20, 2007, I was paralyzed in an accident.

    6. Prior to my accident, no one from Equity ever told me that I had been fired from Equity. In fact, Kathy Gilmore told me that I had been suspended and not terminated.

I have reviewed the foregoing Affidavit consisting of 6 paragraphs and swear that these averments are true and correct under penalty of perjury.

_____
Roger Jordan

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ROGER JORDAN, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   No. 2:08cv152-MEF |
| | ) |
| EQUITY GROUP-EUFAULA DIVISION, LLC, | ) |
| JENNIFER BAKER and RANDY CLINE, | ) |
| | ) |
|     Defendants. | ) |

### AFFIDAVIT OF JEANETTE JORDAN

Jeanette Jordan, being duly sworn according to law, deposes and states as follows:

    1. I work at the Equity Group - Eufaula Division, LLC ("Equity"). On November 20, 2007, my brother, Roger Jordan, who also worked at Equity was paralyzed in a trampoline accident.

    2. I did not learn of Roger's accident until after work on November 20, 2007. When I returned to work on the morning of November 21, 2007, I told my co-workers about Roger's accident and the seriousness of his injuries including the fact that my brother could not move his arms or legs.

    3. Early in the morning on November 21, 2007 I told a plant supervisor at Equity about Roger's accident and injuries in order to explain why Roger was not at work. The supervisor thanked me for letting him know the reason why Roger was not at work and also agreed to let me go home early from work that day because I was so upset about Roger's condition.

4. In the days and weeks following Roger's accident, I went to the Human Resource Department office at Equity on multiple occasions to discuss Roger's condition and his medical insurance. On each of these occasions, beginning on the morning of November 21, 2007, I met with Jennifer Baker in the Human Resources Department. The supervisor at the plant that I discussed Roger's accident with on November 21, 2007, also told me within a week of Roger's accident that Kathy Gilmore in the Human Resources Department was aware of Roger's accident.

I have reviewed the foregoing Affidavit consisting of 4 paragraphs and swear that these averments are true and correct under penalty of perjury.

*Jeanette Jordan*
Jeanette Jordan