IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ROGER JORDAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:08-cv-152-MEF |
| | ) |
| EQUITY GROUP EUFAULA DIVISION, | ) (WO) |
| LLC, JENNIFER BAKER and RANDY | ) |
| CLINE, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

This cause is before the Court on Plaintiff's Motion to Remand. (Doc. # 14.) Plaintiff originally filed his complaint in the Circuit Court for Barbour County, Alabama, alleging two state law tort claims against Equity Group Eufaula Division, LLC and two managers, Jennifer Baker and Randy Cline, for claims arising out of the termination of Plaintiff's employment. Defendants argue that this Court has subject matter jurisdiction over Plaintiff's claims under the doctrine of complete preemption. The Court has thoroughly considered the submissions of the parties in support of and in opposition to the motion. For the reasons set forth in this Memorandum Opinion and Order, the Court finds that it lacks subject matter jurisdiction. Therefore, the Motion to Remand is due to be GRANTED.

**I. FACTS AND PROCEDURAL HISTORY**

Defendant Equity Group Eufaula Division, LLC ("Equity") employed Plaintiff Roger Jordan as a line hanger at a poultry processing plant in Eufaula, Alabama. Defendants

Jennifer Baker and Randy Cline are management employees at Equity. During his employment, Plaintiff was represented by Retail, Wholesale and Department Store Union ("Union"). Union acted as Plaintiff's collective bargaining representative. A collective bargaining agreement ("CBA") between Equity and Union governed the terms of Plaintiff's employment, including employment termination and the provision of health insurance benefits.

On November 20, 2007, Plaintiff suffered a catastrophic non-work related injury while jumping on a trampoline that rendered him a quadriplegic. The parties agree that Defendants terminated Plaintiff's employment and cancelled his health insurance coverage in addition to other benefits. The parties disagree about the reason for the termination. According to Plaintiff, Defendants terminated his employment and cancelled his health insurance coverage after learning of his injury. Defendants claim Plaintiff was terminated for gross misconduct unrelated to his injury.[1]

Plaintiff claims Defendants terminated his employment under pretextual reasons in violation of Defendants' employee handbook and public policy. On January 31, 2008, Plaintiff filed his claims in the Circuit Court for Barbour County, Alabama, alleging two state law tort claims against Defendants for outrageous conduct and wrongful termination. On March 4, 2008, Defendants removed the case to this Court on the grounds that Plaintiff's

---

[1] Defendants allege Plaintiff notified Equity that he had misplaced or lost a paycheck and completed paperwork necessary for a replacement check. Both checks were cashed and Equity suspended Plaintiff pending an investigation. Defendants claim Plaintiff was subsequently terminated for his alleged gross conduct of theft.

claims are completely preempted by federal law. On April 3, 2008, Plaintiff moved to remand on the grounds that federal law does not preempt his claims and that Defendants' removal was procedurally defective.

## II. DISCUSSION

**A. Subject Matter Jurisdiction**

Defendants argue that this Court has jurisdiction because the Plaintiff's state law claims are completely preempted by section 301 of the Labor Management Relations Act ("LMRA"). Federal courts are courts of limited jurisdiction. *See, e.g.*, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). As such, they may only hear cases that they have been authorized to hear by the Constitution or the Congress of the United States. *Kokkonen*, 511 U.S. at 377. The burden of establishing that subject matter jurisdiction exists rests upon the party asserting jurisdiction. *Id.* Defendants, as the removing party, bear the burden of proving federal jurisdiction in this case. *See, e.g.*, *Leonard v. Enterprise Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002). Defendants argue that this Court has jurisdiction because Plaintiff's state law claims are completely preempted by the LMRA. *See Palmer v. Local 8285 U. S. Workers of Am.,* 234 Fed.Appx. 884 (11th Cir. 2007) (section 301 of the LMRA completely preempts certain state law claims and complete preemption is an exception to the well-pleaded complaint rule).[2]

---

[2] Defendants also argue that the Employee Retirement Security Act of 1974, 29 U.S.C. § 1001 *et seq*. ("ERISA") preempts Plaintiff's claims because Plaintiff alleges damages that

A defendant may remove a civil action filed in a state court to federal court if the claim is one "arising under" federal law. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003). In order to determine whether a complaint "arises under" federal law, a court must examine the "well pleaded" allegations of the complaint and ignore potential defenses. *Id.* A suit arises under the Constitution and laws of the United States only when the plaintiffs statement of his own cause of action shows that it is based upon federal law or the Constitution. *Id.* As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim. *Id.* However, a state claim may be removed to federal court under two narrow exceptions to the well-pleaded complaint rule: (1) when Congress expressly provides for removal, or (2) when a federal statute wholly displaces the state law cause of action through complete preemption. *Id.* at 8.

The parties do not dispute that the doctrine of complete preemption applies if Plaintiff's state law claims are "inextricably intertwined" with the terms of the CBA. *See Allis-Chalmers v. Lueck*, 471 U.S. 202, 211 (1985) (a state law claim is preempted by section 301 if "evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract"). The parties disagree about whether the resolution of the state law claims depends upon an interpretation of the CBA.

**B. Complete Preemption Under the LMRA**

---

include a loss of health benefits. Defendants do not cite any authority that ERISA preempts a
state law claim where a loss of health benefits constitute damages only and not a cause of action.

**1. Legal Framework**

Defendants argue section 301 of the LMRA completely preempts Plaintiff's claims because the claims are "inextricably intertwined" with interpretation of Plaintiff's CBA. Pursuant to section 301, "[s]uits for violation of contracts between an employer and a labor organization representing employees ... may be brought in any district court of the United States having jurisdiction of the parties ..." 29 U.S.C. § 185(a). It is well established that a state law claim is preempted by section 301 unless it exists independently of the collective bargaining agreement. *See, e.g., Allis-Chalmers v. Lueck*, 471 U.S. 202, 218 (1985); *Int'l Bhd.of Elec. Workers v. Hechler*, 481 U.S. 851, 859 (1987); *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 408-09 (1988); *United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 370-71 (1990). A state law claim is not sufficiently independent when it requires an interpretation of the collective bargaining agreement. *See* 471 U.S. at 218; 481 U.S. at 859; *see also* 486 U.S. 408-09 ("... as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 preemption purposes"). To determine whether a claim is independent, the Court must examine the elements of the state law claim to see if any of those require interpretation of the collective bargaining agreement. *See Palmer v. Local 8285*, 234 Fed. Appx. 884 (11th Cir. 2007) (citing *Allis-Chalmers*, 471 U.S. at 213 ("we must look to the elements of the state law claim to determine 'whether evaluation of the tort claim is inextricably intertwined' with consideration of the terms of the labor contract")); *Bartholomew v. AGL Resources, Inc.*, 361

5

F.3d 133, 138 (11th Cir. 2004); *Vines v. Sloss Indus. Corp.*, No. CV96-H-546-S, 1996 WL 806682, at *3 (N.D. Ala. Nov. 25, 1996). Using this legal framework, the Court must determine whether section 301 of the LMRA preempts Plaintiff's state law claims or whether the state law claims are sufficiently independent of the CBA and may be remanded back to state court.

**2. Count I: Outrage**

Defendants argue that Plaintiff's claim for the tort of outrage depends upon an interpretation of the CBA because it relates to conduct in the employment context. The Court must determine whether the tort of outage, when related to employment termination, is sufficiently independent of the CBA by examining its elements. To demonstrate an outrage claim under Alabama law, "the plaintiff must present sufficient evidence that the defendant's conduct (1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." *Thomas v. BSE Indus. Contractors, Inc.*, 624 So.2d 1041, 1043 (Ala. 1993). In the employment context, the discharge of an employee rises to the level of the tort of outrage if the discharge violates public policy. *Wyatt v. Bell South, Inc.*, 998 F. Supp. 1303, 1312 (M.D. Ala. 1998) (holding that the discharge of an employee who refused to engage in a criminal act falls within the public policy exception). The Alabama Supreme Court has observed that "an employer, by virtue of his position, possesses no roving license to treat his employee in an extreme and outrageous manner, whether before, during, or after this

6

relationship." *American Rd. Serv. Co. v. Inmon*, 394 So. 2d 361, 364 (Ala. 1981). *Cf. Wal-Mart Stores v. Smitherman*, 872 So.2d 833, 840 (Ala. 2003) ("[I]t would be intolerable in a civilized society to hold that an employer is guilty of outrageous conduct for merely discharging an employee.") (quoting *Harrell v. Reynolds Metals Co.*, 495 So. 2d 1381, 1397 (Ala. 1986)).

Defendants contend that an analysis of the CBA is essential to the resolution of Plaintiff's outrage claim, and as such, this claim is preempted. Defendants further argue that the determination as to whether the employer's actions were sufficiently outrageous to satisfy the second element of this tort is dependent upon the employment context, and here the employment context is largely dependent on the CBA. The Court disagrees.

Although a court must examine some claims of outrage with reference to the CBA, not all claims require such analysis. In *Peterson v. BMI Refractories*, 132 F.3d 1405, 1413 (11th Cir. 1998), the Eleventh Circuit found that the plaintiff's outrage claim was not preempted by the LMRA because the employer's conduct was so outrageous that it was evident without reference to the collective bargaining agreement. Therefore, the LMRA does not preempt an outrage claim if the outrageous conduct is apparent without consideration of the CBA. Here, Plaintiff alleges that the "conduct of the Defendants was outrageous, went beyond all bounds of human decency and should not be condoned, accepted or endured in a civilized society."[3] (Complaint ¶ 3.) As recognized in *Peterson*, whether an employer's

---

[3] This language comes from *American Rd. Serv. Co.*, 394 So. 2d at 365, where the Alabama Supreme Court first recognized the tort of outrage in the employment context.

conduct was outrageous does not always require an analysis of the CBA. Plaintiff's outrage claim is not "inextricably intertwined" with the CBA because it alleges conduct "so outrageous" that it is obvious without reference to the agreement.

### 3. Count II: Wrongful Discharge

Defendants also argue that Plaintiff's claim of wrongful discharge is dependent upon the terms of the CBA. To determine whether wrongful discharge in violation of an employee handbook and public policy is "inextricably intertwined" with the CBA, the Court must first consider whether Plaintiff's mention of Defendants' employee handbook in his complaint translates Count II into a breach of contract claim. If so, then Plaintiff's claim may implicate the CBA. Second, the Court must determine whether wrongful discharge is sufficiently independent of the CBA to withstand preemption.

Defendants argue that Plaintiff's mention of an employee handbook in his complaint creates a breach of contract claim that is preempted by the LMRA. Plaintiff bases his claim of wrongful discharge in part on "the provisions of [Equity's] employee handbook." (Complaint ¶ 3.) Equity's handbook makes clear that employment is at-will unless terms are covered by a written employment agreement. In Plaintiff's case, the CBA is the written employment agreement because Plaintiff was represented by the Union.[4] Indeed, preemption is appropriate when an employee alleges a violation of a labor contract. *See Moss v. Bell South Telecomm., Inc.*, No. 05-12781, 2005 WL 2901904, at *1 (11th Cir. Nov. 4, 2005)

---

[4] Article 3.3 of the CBA provides that employees may only be terminated for "just cause."

(LMRA preempts an employee's outrage claim because she alleged her employer had violated a settlement agreement); *Vines v. Sloss Indus. Corp.*, 1996 U.S. Dist. LEXIS 22504 (N.D. Ala. 1996) (finding plaintiff's claim for retaliatory discharge preempted by section 301 because parties were arguing over specific terms of the collective bargaining agreement). However, Plaintiff does not allege breach of a labor contract or the CBA. Therefore, the Court is unwilling to covert Plaintiff's state law tort claim into a federal contract question.

Next, the Court must determine whether wrongful discharge in violation of an employee handbook and public policy is "inextricably intertwined" with the terms of the CBA. Defendants argue that Plaintiff's claim raises a fundamental question under the CBA: did Defendants have "just cause" to terminate Plaintiff's employment? Instead, Plaintiff's claim asks whether, under Alabama law, Defendants' conduct constitutes wrongful discharge.[5] Plaintiff does not allege a violation of the CBA but specifically pleads that Defendants' conduct violated the public policy of Alabama. As such, Plaintiff's wrongful discharge claim is sufficiently independent of the CBA and is not preempted by the LMRA. Therefore, this Court lacks jurisdiction over Plaintiff's claims and they must be remanded

---

[5]This Court will not address whether Plaintiff has stated a cause of action under state law for wrongful discharge. The Court notes, however, that it is doubtful that a public policy exception exists for at-will employment. *See Hoffman-La Roche, Inc. v. Campbell*, 512 So. 2d 725, 728 (Ala. 1987) (observing that Alabama courts' refusal to engraft public policy exception onto at-will doctrine applied even where employee had been fired for refusing to commit a criminal act); *See also Scott Bridge Co. v. Wright*, 883 So. 2d 1221, 1223 (Ala. 2003) (finding an employee at will may be discharged for any reason, even a "wrong" reason); *Wright v. Dothan Chrysler Plymouth Dodge, Inc.*, 658 So. 2d 428, 431 (Ala. 1995) (Alabama Supreme Court declining to create a public policy exception to the employment at will doctrine, reasoning that any such exception should be created by the legislature).

back to state court.

### III. Procedural Issues Related to Removal

Plaintiff claims that Defendants did not produce facts sufficient to support federal subject matter jurisdiction because Defendants failed to either attach a copy of the CBA or provide evidence that Plaintiff was subject to the CBA in their Notice of Removal. Instead, Defendants attached this evidence to their Opposition to Plaintiff's Motion to Remand. (Doc. # 17.) The procedure for removal is set forth in 28 U.S.C. § 1446(a):

> A defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and *containing a short and plain statement of the grounds for removal*, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

(emphasis added). Plaintiff does not cite any authority in support of their argument.

The party seeking removal has the burden of producing facts that support the existence of federal subject matter jurisdiction. *Hobbs v. Blue Cross Blue Shield of Ala.*, 276 F.3d 1236, 1242 (11th Cir. 2001). It is the Defendants' burden, therefore, to provide facts justifying removal. In *Sierminski v. Transourth Fin. Corp.*, 216 F.3d 945, 948 (11th Cir. 2000), the Eleventh Circuit held that a district court is not limited to evidence provided at the time a petition for removal is filed. A district court may consider post-removal evidence in assessing removal jurisdiction. *Id.* at 949 ("[W]hile it is undoubtedly best to include all relevant evidence in the petition for removal and motion to remand, there is no good reason

10

to keep a district court from eliciting or reviewing evidence outside the removal petition.");
*see also* 14C Wright, Miller, & Cooper, *Federal Practice and Procedure* § 3735 (3d ed. 1998).  Defendants' attachment of the CBA and evidence that Plaintiff was subject to the CBA to their Opposition to Plaintiff's Motion to Remand does not violate § 1446(a). Therefore, Defendants' removal was not procedurally defective.

### III. CONCLUSION

For the reasons set forth above, it is hereby ORDERED that

(1) Plaintiff's Motion to Remand (Doc. # 14) is GRANTED;

(2) The case is REMANDED to the Circuit Court for Barbour County, Alabama;

(3) Any other pending motions are left for resolution by the Circuit Court for Barbour County, Alabama; and

(4) The Clerk is DIRECTED to take appropriate steps to promptly effect the remand.

DONE this 21st day of October 2008.

          /s/ Mark E. Fuller
          CHIEF UNITED STATES DISTRICT JUDGE